FILED
Aug 07, 2026
12:25 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Derrick Hands | Docket No.      2020-08-0199 |
| v. | State File No.   91566-2018 |
| Fresenius Medical Care Holdings, Inc., et al. | |
| and | |
| Troy Haley, Administrator of the Bureau of Workers' Compensation Subsequent Injury and Vocational Recovery Fund | |
| Appeal from the Court of Workers' Compensation Claims Shaterra R. Marion, Judge | Heard July 14, 2026 via Microsoft Teams |

---

### Affirmed and Certified as Final

---

The sole issue in this compensation appeal is whether the trial court has the authority to limit an employer's obligation to pay for unauthorized medical treatment to the amounts provided in the applicable medical fee schedule when the employer previously denied the medical treatment. The employee reported injuring his low back and right knee while making a delivery in the course and scope of his employment. He had a pre-existing back injury that the employer argued was the cause of his ongoing back pain, although it stipulated to the compensability of the knee injury. After the trial, the court found that the employee had suffered a permanent worsening of his pre-existing back condition. It awarded permanent partial disability benefits and future medical benefits, and it ordered the employer to pay past unauthorized medical bills related to treatment of the back condition pursuant to the fee schedule. The employee has appealed only the portion of the order limiting the payment of the past medical bills to the fee schedule. Having carefully reviewed the record and heard the arguments of counsel, we affirm the trial court's order in its entirety and certify it as final.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Andrew L. Wener, Memphis, Tennessee, for the employee-appellant, Derrick Hands

J. Brent Moore and Emily Bragg Faulkner, Brentwood, Tennessee, for the employer-appellee, Fresenius Medical Care Holdings, Inc.

Timothy P. Kellum, Memphis, Tennessee, for the appellee, Subsequent Injury and Vocational Recovery Fund

## Factual and Procedural Background

As the sole issue on appeal is a purely legal one concerning the trial court's limitation of Employee's recovery of unauthorized medical benefits to the amounts provided in the applicable fee schedule, our summary of the factual and procedural history of this case is for context only. On November 12, 2018, Derrick Hands ("Employee") was making a delivery to a customer of Fresenius Medical Care Holdings, Inc. ("Employer"), when he fell through rotted wood, resulting in pain in his low back and right knee. Employer provided a panel from which Employee selected Dr. Frederick Wolf. Dr. Wolf primarily treated Employee's knee injury, although he consistently documented Employee's ongoing complaints of radiating lumbar pain. Dr. Wolf performed several injections in Employee's back, but they did not relieve his pain. As such, Dr. Wolf released Employee at maximum medical improvement ("MMI") for his right knee with a 1% impairment rating and referred Employee to Dr. Spencer Hauser, a spine surgeon, for further treatment of his back.

Employer authorized a visit with Dr. Hauser on March 21, 2019. Following his evaluation, Dr. Hauser recommended an interbody and posterior fusion at L4-5 and possibly at L5-S1, which Employer did not authorize. Employee returned to Dr. Hauser on June 3, 2019, and Dr. Hauser recommended a second opinion. Employer authorized a second opinion with Dr. John Brophy, which occurred on November 15, 2019. Dr. Brophy opined that the need for surgery was not primarily caused by the work injury and was instead primarily due to Employee's pre-existing condition. Employer denied the surgery based on this opinion.[1]

Employee continued seeing Dr. Hauser for unauthorized care, including the recommended surgery. Employee continued to have pain post-surgery and underwent a course of physical therapy and pain management, all of which was unauthorized. Dr. Hauser ultimately released Employee at MMI on December 6, 2024, with a 12% permanent impairment rating.

---

[1] Employer also retained Dr. Samuel Murrell, a neurosurgeon, to perform a medical evaluation of Employee. Dr. Murrell agreed with Dr. Brophy's opinion that need for the recommended surgery was not primarily caused by the work injury.

At the February 5, 2026 trial, the parties stipulated to the compensability of the knee injury and its resulting impairment. Employee sought payment of all medical bills related to the unauthorized treatment for his back, which he claimed totaled $562,783.85, and a finding that he was permanently and totally disabled as a result of his work-related injuries. Employer argued that Dr. Hauser was not selected from a panel, thus, his opinion did not have a presumption of correctness pursuant to Tennessee Code Annotated section 50-6-102(12)(E). Employer asserted that the opinions of Dr. Brophy and Dr. Murrell should carry more weight than that of Dr. Hauser. Employer also argued that Employee's calculation of the medical bills was inaccurate. Finally, Employer argued that even if the back injury was compensable, Employee was not permanently and totally disabled.

Although the court agreed there was no presumption of correctness accorded to Dr. Hauser's causation opinion, the court found it to be the more probable explanation in light of Employee's testimony that he had not suffered from any back pain prior to the work accident. It did not find Employee to be permanently and totally disabled and instead awarded Employee permanent partial disability benefits and ongoing medical benefits for the back and knee with Dr. Hauser and Dr. Wolf, respectively. It then ordered Employer to pay the unauthorized medical bills pursuant to the fee schedule and awarded Employee's counsel a fee equal to 20% of that award. Employee has appealed the issue related to unauthorized medical bills only.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2025). The interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2025).

**Analysis**

*Fee Schedule*

The only issue on appeal is whether the Court of Workers' Compensation Claims has the authority to limit an employer's obligation for payment of unauthorized medical expenses to Tennessee's medical fee schedule as set out in Tenn. Comp. R. and Regs. 0800-02-18. Employee argues the trial court does not have that authority with respect to medical treatment the employer denied but has been found liable for; instead, Employee asserts that the employer is legally obligated to pay the full cost of such treatment. In support of his

3

position, Employee relies on our opinion in *Acevedo v. Crown Paving, LLC*, No. 2021-06-1453, 2023 TN Wrk. Comp. App. Bd. LEXIS 7 (Tenn. Workers' Comp. App. Bd. Jan. 27, 2023). In *Acevedo*, the trial court had allowed a medical provider to intervene in a workers' compensation action for death benefits to protect its interest in the payment of medical bills. *Id.* at *4. On appeal, we disagreed and concluded it was an abuse of discretion to permit the intervention, explaining:

> If the trial court were to deem the claim compensable, the entitlement to medical benefits under Tennessee's Workers' Compensation Law, including the payment of medical bills already incurred, belongs to Decedent and, in turn, his surviving spouse or estate. It does *not* belong to [the medical provider], and nothing in the Workers' Compensation Law assigns [the medical provider] as a successor in interest upon Decedent's death. If, on the other hand, the trial court were to conclude Decedent's fall did not arise primarily out of the employment, [the medical provider's] claim for the payment of medical bills would appropriately be directed to Decedent's estate.

*Id.* at *6-7 (emphasis in original). We went on to say that "a cause of action filed pursuant to the Workers' Compensation Law was *the employee's* claim for any benefits to which *the employee* may be entitled under the provisions of that law." *Id.* at *13 (emphases in original). We then explained that the Court of Workers' Compensation Claims, as a court of limited jurisdiction, could not exercise subject matter jurisdiction over a medical provider's claim for payment of medical bills. *Id.* at *16-17.

Employee also relied on the Tennessee Supreme Court's opinion in *Knox Stove Works v. Hodge*, 289 S.W. 505 (Tenn. 1926), a case we cited in *Acevedo*, in which an employer argued that a justice of the peace did not have jurisdiction to resolve a billing dispute between itself and a physician related to medical treatment provided to an employee. *Id.* at 505-06. The employer did not dispute the compensability of the injury, only the amount of the bill as charged by the physician. *Id*. at 506. The Supreme Court held the justice of the peace did have jurisdiction, as the issue was related to a contract dispute, not the underlying workers' compensation case, stating:

> If the employee should sue for the value of medical services that he procured for himself . . ., jurisdiction of such a suit would be in the courts named [in the Workers' Compensation Law]. Likewise[,] if the employee should sue for the failure of the employer to furnish the medical services required of the employer by [the Workers' Compensation Law], jurisdiction of such a suit would be in the courts named in [the Workers' Compensation Law].
> . . . .

4

The suit here does not rest upon [the Workers' Compensation Law] but is based upon a contract, and jurisdiction of such a suit lies in the same tribunals that have jurisdiction of a suit for . . . any other contract.

*Id*. at 507. Given that relevant laws in 1926 gave justices of the peace jurisdiction over contract disputes, the Court concluded the justice of the peace had jurisdiction over the billing dispute between an employer and a medical provider because the claim was not grounded in the Workers' Compensation Law. *Id*.

Thus, in Employee's view, *Acevedo* and *Knox Stove Works* support his position that the Court of Workers' Compensation Claims cannot limit an employer's obligation to pay for past unauthorized medical treatment to the amounts provided in Tennessee's medical fee schedule. Employee maintains that, in cases where an employee seeks unauthorized medical care that should have been provided by the employer, the contract for services is between the medical provider and the employee, and an employer should not get the benefit of a reduced obligation pursuant to the fee schedule.

In contrast, Employer contends that Employee's reliance on the above cases is misplaced, and the issue here is instead controlled by *Bragg v. Premium Services, LLC*, No. 2020-07-0020, 2023 TN Wrk. Comp. App. Bd. LEXIS 36 (Tenn. Workers' Comp. App. Bd. Aug. 1, 2023). In *Bragg*, the employee argued that the trial court erred when it limited the award of medical benefits to the fee schedule rather than the amount the employee's private medical insurance had paid the unauthorized provider. *Id.* at *16-17. We found no error, stating,

> [T]he General Assembly enacted a statute that requires employers to pay medical expenses for work-related injuries pursuant to the terms of that fee schedule. *See* Tenn. Code Ann. § 50-6-204(a)(3)(A)(iii) ("[t]he liability of the employer for the services provided to the employee *shall* be limited to the maximum allowable fees" under the fee schedule); *see also* Tenn. Comp. R. & Regs. 0800-02-18-.01 *et seq.* In fact, employers are prohibited from paying any medical bill for a covered injury outside the fee schedule. Tenn. Comp. R. & Regs. 0800-02-18-.15(1).

*Id.* at *18 (emphasis added). Thus, in Employer's view, nothing in the applicable regulation as quoted above distinguishes between medical bills arising from treatment it initially authorized versus medical bills arising from unauthorized treatment it is later ordered to pay. Instead, the applicable regulation requires employers to pay *all* reasonable and necessary medical bills arising from work-related injuries pursuant to the fee schedule.

In response to this argument, Employee counters that, if Employer's position is correct, then an employee who is forced to seek unauthorized medical care in circumstances where such treatment should have been covered by the employer will remain

obligated to pay any balance above what an employer is eventually ordered to pay pursuant to the fee schedule. That is the crux of the current appeal.

We agree with Employer that Employee's reliance on *Acevedo* and *Knox Stove Works* is misplaced. *Acevedo* involved a medical provider's ability to intervene in a case between an employer and an employee, and it addressed whether a medical provider's interest in the payment of medical bills could be legally characterized as a "subrogation lien." That is not the issue in the present case. Moreover, in *Knox Stove Works,* the Supreme Court determined that a physician could not pursue payment of a medical bill from an employer for care provided to an employee under the worker's compensation law but instead must pursue that claim in a court with jurisdiction over contract disputes. It is important to note, however, that *Knox Stove Works* was decided well before the creation of a fee schedule as described in Tennessee Code Annotated section 50-6-204(a)(3)(A)(iii) and before the creation of the medical payment committee as defined in Tennessee Code Annotated section 50-6-125, which has the authority to hear "disputes on medical bill payments between providers and insurers." Tenn. Code Ann. § 50-6-125(a)(1) (2025).[2] Thus, we conclude the Court of Workers' Compensation Claims is statutorily obligated to order an employer and its insurer to abide by the medical fee schedule as set out in Tennessee Code Annotated section 50-6-204(a)(3)(A)(iii) for all reasonable and necessary medical bills arising from a compensable work injury. Beyond that, disputes between a medical provider and the employer/insurer must be addressed in accordance with statutory provisions governing the medical payment committee in Tennessee Code Annotated section 50-6-125. That leaves the question of how to address medical bills arising from treatment an employee seeks from unauthorized providers that are later determined to be compensable.

As the Tennessee Supreme Court has explained, "When 'shall' is used . . . it is ordinarily construed as being mandatory and not discretionary." *Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) (internal citations omitted). As stated above, an employer's liability to pay medical expenses in a workers' compensation claim "*shall* be limited" to the amounts provided in the fee schedule. Tenn. Code Ann. § 50-6-204(a)(3)(A)(iii) (2025) (emphasis added). Although an employer may negotiate with a provider to pay *less* than the fee schedule, paying *more* is prohibited. Tenn. Comp. R. & Regs. 0800-02-18-.15(1) (2023). More specifically, that regulation states:

> Except when a waiver is granted by the Bureau, providers *shall not accept* and employers or carriers *shall not pay* any amount for health care services provided for the treatment of a covered injury or illness or for any other services encompassed within . . . [m]edical [f]ee [s]chedule [r]ules . . ., when

---

[2] Tennessee Code Annotated section 50-6-125(a)(1) outlines the process for a provider to bring a billing dispute before the committee, and Tennessee Code Annotated section 50-6-118(c) explains the process for appealing any penalty determination against a provider or insurer as a result of that process. *See also Acevedo*, 2023 TN Wrk. Comp. App. Bd. LEXIS 7, at *17 n.5.

6

that amount exceeds the maximum allowable payment established by these [r]ules.

Tenn. Comp. R. & Regs. 0800-02-18-.15(1) (2023) (emphases added).

Although we have previously held that an employer who denies medical treatment runs the risk of being held responsible for unauthorized medical treatment if the claim is determined compensable, we conclude those risks, specifically before the Court of Workers' Compensation Claims, do *not* include being made to pay medical bills at a rate higher than that compelled by the fee schedule. We have found no authority, and Employee has identified none, to support the contention that the fee schedule does not apply to an employer's compelled payment for medical treatment after a previous denial. In other words, we have found no statute or regulation that suggests payment of medical bills differs depending on whether the treatment was authorized or unauthorized. On the other side of the same coin, we find no authority, and Employee has identified none, that would permit the Court of Workers' Compensation Claims to forego the mandates in applicable statutes and regulations and order an insurer to pay more than the amounts allowed by the fee schedule. Accordingly, we find no error in the trial court's order regarding the fee schedule. If such a change is to be made, it is for the legislature, not the courts, to address.

*Ripeness*

Although not raised on the notice of appeal or in his brief, Employee's counsel asserted at oral argument that Employee's unauthorized medical providers would attempt to collect outstanding balances from his client if Employer's financial obligations were limited to the fee schedule. He admitted there was nothing in the record to substantiate this concern or to indicate a provider had sought payment of outstanding balances from Employee to date.[3] To the extent Employee is alleging a harm that has not occurred and is not at all certain to occur, this issue is not ripe for appeal. *See, e.g., Foriest v. United Parcel*

---

[3] Employee's counsel attached numerous medical bills and invoices as an exhibit to Dr. Hauser's first deposition but provided no accounting of the total amount of such bills or the amounts outstanding at the time of trial, if any. The invoices indicate numerous payments from multiple sources, including a private health insurance carrier and Employee. Employee did not testify as to any amounts he personally paid for medical services. Employee's counsel stated at trial that Employee's wife's medical insurance paid the medical bills, although he contended at oral argument that nothing in the record supported that assertion and that, in any event, the collateral source rule rendered any such information irrelevant. At oral argument, when asked about the discrepancy between his calculation of the total medical expenses ($562,783.85) and Employer's calculation ($147,979.91), Employee's counsel was unable to provide an explanation, eventually conceding that the "exhibit is what the exhibit is." Employer's counsel indicated that there were duplicative bills included in the exhibit, which it had not included in its calculations, but that even if a bill were not attached to the exhibit, if it was for reasonable and necessary treatment arising primarily from the work injury, Employer would pay it pursuant to the fee schedule and in compliance with the trial court's order.

*Service, Inc.*, No. 2017-06-0413, 2018 TN Wrk. Comp. App. Bd. LEXIS 39, at *6-8 (Tenn. Workers' Comp. App. Bd. Aug. 10, 2018) ("The central concern of the ripeness doctrine is whether the case involves uncertain or contingent future events that may or may not occur as anticipated or, indeed, may not occur at all."). Simply put, there is no evidence in this record that any provider is seeking or intends to seek payment from Employee for unpaid medical bills arising from his work-related injuries.[4]

Moreover, Employee's argument does not take into account Tennessee Code Annotated section 50-6-122(b) (2025), which states, "A health care provider shall not pursue a private claim against a workers' compensation claimant for all or part of the costs of health care services provided to the claimant by the provider" except in certain limited circumstances. As counsel for Employee noted at oral argument, subsection 50-6-122(b)(2) states that the provider can pursue an injured employee for health care costs if "[t]he physician . . ., who was not authorized by the employer at the time the services were rendered, knew that the physician . . . was not an authorized physician . . . ."[5] However, the concern that a provider *might* seek payment from an employee for outstanding balances related to a work injury determined to be compensable by the Court of Workers' Compensation Claims also fails to consider the Bureau's regulation regarding reimbursement to an employee who pays a provider for services later determined to be compensable:

---

[4] Employee's counsel stated multiple times during oral argument that the order for Employer to pay for the unauthorized medical treatment pursuant to the fee schedule left his client "holding the bag." He argued that reduction of the medical bills to the fee schedule would leave a balance for Employee to pay to the provider, and he noted his claim for an additional attorneys' fee equal to twenty percent (20%) of the value of the unpaid medical bills. *See Langford v. Liberty Mut. Ins. Co.*, 854 S.W.2d 100, 102 (Tenn. 1993). The law is clear that such fees are to be paid by the party who hired that attorney. *See* Tenn. Code Ann. § 50-6-226(a)(1); *Bowlin v. Servall, LLC*, No. W2020-01708-SC-R3-WC, 2021 Tenn. LEXIS 532, at *18 (Tenn. Workers' Comp. Panel Aug. 13, 2021). Presently, we are unaware, and Employee's attorney has not indicated, that he has been retained by or is pursuing payment for unauthorized medical bills on behalf of medical providers or that his fees would be paid pursuant to an agreement with them. Assuming for the purposes of this note that we were to agree with Employee's counsel that Employer was responsible for paying his suggested total of $562,783.85 in unauthorized medical bills, then Employee's counsel could theoretically be entitled to an additional fee from Employee of $112,556.77. Employee's total award for permanent disability benefits at trial, which Employee did not appeal, was $80,219.97. After statutory attorneys' fees are deducted from this amount, Employee's net award is $64,175.98. Thus, not only would such an attorneys' fee award for medical expenses completely negate Employee's recovery of permanent disability benefits, it could leave Employee *owing* his attorney a substantial sum. This, in our view, is an absurd result that principles of statutory construction mandate us to avoid when interpreting relevant statutes and regulations. *See, e.g., Martin v. Powers*, 505 S.W.3d 512, 518 (Tenn. 2016) ("[We] must presume that the [l]egislature did not intend an absurdity and adopt, if possible, a reasonable construction which provides for a harmonious operation of the laws.") (quoting *Fletcher v. State*, 951 S.W.2d 378, 382 (Tenn. 1997)).

[5] The record does not speak to whether Dr. Hauser, who was initially authorized, later became an unauthorized provider or remained authorized for treatment other than the recommended surgery.

> Notwithstanding any other provision of this rule, if an employee has personally paid for a health care service and at a later date an employer is determined to be responsible for the payment for that specific service, then *the employee shall be fully reimbursed by the employer*. Medical [f]ee [s]chedule maximum payments may not apply under this provision. If the service delivered is determined to be reasonable and necessary, the reimbursed expenses may exceed the maximum fee schedule amount.

Tenn. Comp. R. & Regs. 0800-02-17-.11 (2026) (emphasis added). Therefore, as mandated by that rule, if Employee documents out-of-pocket payments to medical providers for treatment the court deemed compensable, Employer is responsible to reimburse Employee for any out-of-pocket costs if not otherwise resolved through payments Employer remits under the fee schedule as ordered by the court.[6] In short, if Employer's compliance with the court's order results in an amount owed to *Employee* for out-of-pocket costs, Employer is responsible, subject to the court's determination that the charge was "reasonable and necessary" and the need for which was primarily caused by the work accident. *See, e.g.*, *Bowlin*, 2021 Tenn. LEXIS 532, at \*17 ("[A]n employer is liable for all medical expenses deemed reasonable and necessary as a result of the workplace injury.") (internal citation and quotation marks omitted). Despite Employee's counsel's argument, we conclude that neither the statute nor the rules require *an employee* to pay for reasonable and necessary medical care a court has ordered the employer to provide. In short, we find Employee's arguments that he will be held responsible for balances above what any particular medical provider receives from Employer pursuant to the fee schedule to be, at this point, speculative, not supported by applicable statutes and regulations, and not ripe for consideration.

## Conclusion

For the foregoing reasons, we affirm the court's order in its entirety and certify it as final. Costs on appeal are taxed to Employee.

---

[6] Counsel for Employer contended in oral argument that, in practice, an order by a court to pay past unauthorized medical expenses typically results in the provider refunding the employee for any payments he or she previously made and then billing the employer pursuant to the fee schedule. Employee's counsel responded that the statements made by Employer's counsel were speculative but did not dispute them.